IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER NOVUS DAVIS,<br>No. L135898,<br><br>                Plaintiff,<br><br>vs.<br><br>NURSE STEPHANIE,<br>NORMAN GRAU,<br>JOHN DOE 1,<br>JOHN DOE 2, and<br>DEPARTMENT OF HUMAN SERVICES,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 16-cv-00339-MJR |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

    Plaintiff Christopher Davis, who is currently detained at the Lake County Jail, brings this action pursuant to 42 U.S.C. § 1983 for the deprivations of his constitutional rights at Chester Mental Health Center. (Doc. 1). While housed there in 2012, Plaintiff was allegedly subjected to the unlawful use of restraints on two occasions and forced medication on one occasion. (*Id*. at 6-16). He now sues Norman Grau (security therapy aid), Stephanie (nurse), John Doe 1 (unknown physician), John Doe 2 (unknown registered nurse), and the Department of Human Services for monetary damages.

    This case is before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is

immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

## The Complaint

After being found unfit to stand trial, Plaintiff was transferred to Chester Mental Health Center ("CMHC") on September 27, 2012. (Doc. 1, pp. 6-7). He was housed there until March 2, 2013. (*Id*. at 7). In his complaint, Plaintiff complains about two incidents involving the unauthorized use of restraints and forced medication that occurred at CMHC in late 2012. The factual allegations describing each incident are summarized below.

**1.      October 20, 2012**

On October 20, 2012, Plaintiff was placed in seclusion after "having words with staff." (*Id*. at 8). While in the "quiet room," he began "singing and rapping while making a music beat." (*Id*.). Without warning, five or six members of CMHC's staff approached Plaintiff's room and informed him that he would be placed in restraints if he continued to sing. Plaintiff responded by stating, "[S]o basically[,] I'm being punished with restraints for just singing, which is how I vent." (*Id*. at 9).

A security therapy aid, Norman Grau ("STA Grau"), asked Plaintiff if he would resist restraints, and Plaintiff said that he would not. Even so, STA Grau ordered the staff to "go 'hands on'" with Plaintiff. (*Id*.). Several staff members then grabbed Plaintiff and escorted him to a restraint room, where a restraint was placed on each hand and ankle. (*Id*. at 9, 12). Nurse Stephanie informed Plaintiff that he would remain in restraints until he quieted down. She also warned him that "further action" would be taken, if he continued singing. (*Id*. at 10). Plaintiff continued singing.

Nurse Stephanie returned to the room two minutes later with a "chest posey." (*Id*.). The device was placed around Plaintiff. Still, he continued singing.

Nurse Stephanie and STA Grau next warned Plaintiff that he would be given "emergency forced medication," if he did not stop singing. Plaintiff told them that they could not administer the medication because he explicitly refused all forms of medication during his admission to CMHC. In addition, they had no court order authorizing the use of forced medication and no grounds for administering it; he was not out of control and did not pose a threat to himself or others. Nurse Stephanie and STA Grau ignored Plaintiff and administered the emergency medication. (*Id*. at 11). Plaintiff was never provided with information regarding the type of medication he was given, the dose, or its side effects. (*Id*.).

**2.    December 15, 2012**

A second incident occurred on December 15, 2012. (Doc. 1, pp. 14-16). On that date, Plaintiff spoke with two unknown security therapy aids ("STA 1" and "STA 4"). Plaintiff asked them to explain why STA Grau forced him to sit alone in the dining room, even after CMHC's management team lifted all restrictions against him. Plaintiff complained that STA Grau was harassing him in retaliation for an incident that occurred on December 26, 2011. He pointed out that STA Grau was the only staff member who forced him to sit alone. Plaintiff's request to "speak with someone" was denied. (*Id*. at 15).

Plaintiff "began expressing [his] feelings towards Norman Grau." (*Id*.). An undisclosed officer warned Plaintiff that he would be sent to another module (living unit), if he did not stop talking. Plaintiff continued complaining and was ordered to move to Module 3. He allegedly complied with this order.

Once there, Plaintiff was warned that he would be "tied down," if he continued to call STA Grau a racist. (*Id*.). When Plaintiff accused staff of punishing both singing and talking at CMHC, he was placed in restraints by an unknown physician ("Doctor John Doe 1") and an unknown nurse ("Nurse John Doe 2"). (*Id*. at 16, 23). He was not released from the restraints for several hours.

Plaintiff reported the above-described incidents to the Office of the Inspector General and Human Rights Authority. (*Id*. at 11, 16). An investigation followed. On October 1, 2013, Plaintiff received a report indicating that his complaints of rights violations related to the administration of emergency medication and use of restraints were substantiated. (*Id*. at 19-29). Plaintiff now sues Nurse Stephanie, STA Grau, Doctor John Doe 1, Nurse John Doe 2, and the Department of Human Services for violating his "rights." (*Id*. at 17). He seeks declaratory judgment and monetary damages. (*Id*.).

## Discussion

The time for filing this action has long passed. For claims brought pursuant to § 1983, this Court "borrows the limitations period and tolling rules applicable to personal-injury claims under state law." *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013). *See also O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) (citing *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014); *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). In Illinois, the personal injury statute of limitations is two years. 735 ILCS 5/13-202.

Therefore, Plaintiff had two years from the date his claims accrued to file this lawsuit. He filed his original complaint on March 28, 2016. To be considered timely, his claims must have accrued on or after March 28, 2014.

Accrual rules are governed by federal law "conforming in general to common-law tort principles." *Devbrow*, 705 F.3d at 767 (quoting *Wallace*, 549 U.S. at 388).  In this context, a plaintiff's claims accrue when he knows that he has been hurt and who caused it.  *See King v. Chapman*, 2014 WL 6883434 (N.D. Ill. 2014); *Koch v. Gregory*, 536 F. App'x 659, 660 (7th Cir. 2013) (holding that the plaintiff's claim accrued when he knew that the defendants were forcibly administering medication to him that was harmful and unnecessary).  For Plaintiff, this occurred long before March 28, 2014.

According to the complaint, Plaintiff transferred to CMCH on September 27, 2012, after he was found unfit to stand trial.  (Doc. 1, pp. 6-7).  The two incidents giving rise to this action occurred the same year, on October 20th and December 15th respectively.  (*Id*. at 6-16).  On those dates, Plaintiff was forcibly restrained and/or medicated by the defendants.  Plaintiff's claims accrued on October 20th and December 15th, 2012, respectively, and the statute of limitations on his claims ran two years later in 2014.

He allegedly knew that the defendants' conduct was unlawful at the time each incident occurred.  Plaintiff informed the defendants of this, and he filed a formal complaint with the Office of the Inspector General and Human Rights Authority.  Some of his complaints were substantiated following an investigation into both incidents.  The Human Rights Authority provided Plaintiff with a copy of its report on October 1, 2013.  That report is attached to the complaint.  (*Id*. at 19-29).  Even so, Plaintiff waited to file his original complaint until more than three years after his claims accrued and more than two years after the Human Rights Authority substantiated his complaints.

Plaintiff's ignorance of his legal rights did not delay the accrual date for his claims or toll the statute of limitations.  *Koch*, 536 F. App'x at 660 (7th Cir. 2013) (citations omitted).  Once a

plaintiff is "in possession of the critical facts that he has been hurt and who has inflicted the injury," others "can tell him if he has been wronged, and he need only ask." *Id.* Plaintiff alleges that he believed these claims were being addressed in another action that is currently pending in this District. *See Davis v. Dep't of Human Servs., et al.*, Case No. 13-cv-1260-JPG-PMF (S.D. Ill. 2013). He was wrong; that case addresses a single incident involving the alleged use of excessive force by staff at CMHC on December 26, 2011. When his attorney informed Plaintiff that a new action would need to be filed, Plaintiff filed the instant complaint. (Doc. 1, pp. 6-7).

This misunderstanding does not save the claims. A plaintiff may plead himself out of court by alleging facts in his complaint that show his suit is time-barred. *Tregenza v. Great American Commc'n Co.*, 12 F.3d 717, 718 (7th Cir. 1993). Plaintiff has done so in this case. The allegations clearly show that the applicable statute of limitations bars Plaintiff's suit. Dismissal of the complaint under § 1915A at screening is therefore appropriate. *See Koch*, 536 F. App'x at 660 (citing *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002)). For the reasons set forth herein, Plaintiff's complaint shall be dismissed, and the dismissal shall be with prejudice.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's complaint (Doc. 1) is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A because Plaintiff's claims are time-barred.

**IT IS FURTHER ORDERED** that Plaintiff's motion for recruitment of counsel (Doc. 3) is **DENIED**. Because Plaintiff's claims are time-barred, the appointment of counsel to represent him in this matter would make no difference to the outcome of this case.

Plaintiff is **ADVISED** that this dismissal shall count as a "strike" under the provisions of 28 U.S.C. § 1915(g). If Plaintiff wishes to appeal this dismissal, his notice of appeal must be

filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly

**IT IS SO ORDERED.**

**DATED: May 2, 2016**

s/ MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**